SPRING CREEK TAXPAYERS ASSOCIATION, Appellant,

v.

PENNINGTON COUNTY, a Political Subdivision of the State of South Dakota, Respondent.

No. 12427.

Supreme Court of South Dakota.

Argued Feb. 16, 1979.

Decided June 14, 1979.

Rehearing Denied July 13, 1979.

Charles Rick Johnson of Johnson, Johnson & Eklund, Gregory, for appellant.

Gregory Eiesland and Curtis D. Ireland of Lynn, Jackson, Shultz, Ireland & Lebrun, Rapid City, for respondent.

DUNN, Justice.

This case involves an action brought by the Spring Creek Taxpayers Association (taxpayers) to recover property taxes paid on an alleged double assessment in the year 1970 resulting from school reorganization. The Pennington County commissioners denied the taxpayers' application for refund, and the circuit court approved the denial, concluding that the taxpayers were not subjected to double taxation as the result of school reorganization. We affirm.

On February 25, 1970, the State Commission on Elementary and Secondary Education attached Spring Creek Common School District No. 12 of Pennington County (common school district or RCI/12)[1] to Rapid City Independent School District No. 1 of Pennington County (RCI/1) effective July 1, 1970. On April 16, 1970, the Pennington County Board of Education implemented the State Commission's action by adopting a resolution dissolving the common school district and attaching it to RCI/1, transferring and equalizing the assets, and instructing the Pennington County auditor and treasurer to transmit taxes and other monies accruing to the credit of the common school district on or after July 1, 1970, to the credit of RCI/1.[2] The Board completed the next step in reorganization by adjusting and equalizing the assets and liabilities between RCI/12 and RCI/1 pursuant to a resolution and order dated September 21, 1970. To discharge the liabilities of RCI/12, the resolution directed the Pennington County auditor to place a mill levy against the taxable property in RCI/12 in an amount sufficient to pay RCI/1 $6,208. This amount was purportedly the result of the cost of educating the students from RCI/12 in the RCI/1 system for the second half of calendar year 1970 decreased by a credit for RCI/12 school tax revenue received by RCI/1 after July 1, 1970, and increased by other RCI/12 liabilities.

On November 18, 1975, the taxpayers filed an application with the Pennington County commissioners for refund of property taxes paid on the RCI/12 1970 school tax assessment in the amount of $71,698.62 plus

1. For periods of time prior to the reorganization date, July 1, 1970, the taxpayers' school district will be referred to as the common school district and for periods of time subsequent to the reorganization, the district will be referred to as RCI/12.

2. In a transaction which does not affect our analysis in this case, twenty percent of the property in RCI/12 was retransferred by the Pennington County Board of Education to the Custer Independent School District. Twenty percent of the monies accruing from the RCI/12 mill levies were also transmitted to the Custer School District.

interest.[3] The taxpayers contend that this amount was collected in addition to 1970 tax receipts which were previously levied and were allegedly sufficient to satisfy the educational costs incurred by RCI/1 during the last half of calendar year 1970. On October 14, 1975, the Pennington County commissioners adopted a resolution rejecting the taxpayers' application for refund. The commissioners' decision was appealed and the matter was presented to the circuit court on May 23, 1977. Judgment was rendered on January 13, 1978, approving the denial of the application for refund and dismissing the appeal.

The sole issue presented on the appeal before us is whether the taxpayers were subjected to double taxation during the second half of 1970 as the result of school reorganization.

■ In their brief, the taxpayers challenge the effective date of the reorganization. Our reorganization statutes prescribe that the operative date of such school reorganizations is the first day of July following the date of the order by the superintendent of elementary and secondary education, "except that when such order is issued after the first day of March the new school district shall not become operative until the first day of July of the next subsequent calendar year." SDCL 13–6–61. The taxpayers cite SDCL 6–10–1 which provides that political subdivisions may not be legally incorporated or dissolved until notice of incorporation or dissolution is filed with the secretary of state. The taxpayers argue that the secretary of state did not

receive notice of the reorganization until after March 1, 1970, which makes the effective date of this reorganization one year later, i. e., July 1, 1971. We disagree. The reorganization order of the superintendent of elementary and secondary education was issued on February 25, 1970. The fact that the secretary of state may have been notified after March 1st is of no consequence in regard to the effective date of the reorganization. The July 1, 1970 reorganization date was also the dissolution date for the common school district and it is not disputed that the secretary of state was notified prior to that date.[4] Therefore, the operative date of the reorganization was properly set at July 1, 1970.

With regard to the alleged double taxation resulting from the equalization of assets and liabilities between the two school districts after reorganization, it is important to understand the statutes involved and their application to the facts in the present case. To implement the reorganization, the Pennington County Board of Education had the authority to make necessary adjustments in the assets and liabilities of the districts pursuant to SDCL 13–6–81[5] which reads as follows:

"If the board of county commissioners shall find that a school district, totally dissolved by reorganization, has an excess of total liabilities over its total assets, such board of county commissioners may authorize a tax levy against the property located within the boundary of such former school district necessary to discharge the balance of liabilities. Such tax levy

3. This application was filed pursuant to SDCL 10–18–1 which states in pertinent part as follows:

"Unless otherwise expressly provided, if any person, against whom an assessment has been made or a tax levied, claims such assessment or tax or any part thereof to be invalid for any reason herein stated, the same may be abated, or the tax refunded if paid, and the board of county commissioners is authorized and empowered to abate or refund, in whole or in part, such invalid assessments or taxes in the manner hereinafter prescribed and in the following cases only:
\* \* \* \* \* \*

(6) When the same property has been assessed against the complainant more than once in the same year, and the complainant produces satisfactory evidence that the tax thereon for such year has been paid \* \*."

4. Accordingly, it is not necessary to reach the counter-argument of RCI/1 that the curative statute, SDCL 13–6–1.1, corrects any secretary of state notice deficiencies.

5. SDCL 13–6–81 is substantially the same currently as it was during the 1970 reorganization at which time Ch. 42, § 1, S.L.1968 governed its substance.

shall not exceed ten mills in any one year and shall be exclusive of all other tax limitations. * * * "

This special levy fits into the regular scheme of taxation which is statutorily prescribed. SDCL 10–6–2 provides that all real and personal property subject to taxation must be listed and assessed annually during the first six months of the year with the valuation of such property fixed according to its value on the first day of February. School districts must adopt by resolution a levy in dollars which is sufficient to meet the school budget for all funds and must report the dollar amount to the county auditor prior to September first. The county auditor must then "spread a levy in mills over the taxable property of the school district * * * subject to the legal mill limitations on any of the funds as provided by law." SDCL 13–11–3. See also, SDCL 10–12–29, 13–11–2. The auditor prepares a levy report and tax list for the county and delivers the tax list to the county treasurer "on or before the first day of January following the date of the levy for the current year * * *." SDCL 10–17–7. The property taxes which are derived from the mill levies on the assessed valuation of the property become due to the county treasurer on the first day of January of each year following the levy. SDCL 10–21–4, 10–19–1, 10–21–1. The payment of such taxes, however, is not deemed to be delinquent if one-half of the taxes is paid by May 1st and the remaining one-half is paid by November 1st. SDCL 10–21–23. In short, taxes levied in one year are payable the following year.

With this understanding of the statutory scheme involved, we turn to the record for an analysis of the factual situation in the present case. In 1969, the common school district imposed a total mill levy of 8.07 mills on the assessed valuation of $2,114,380. This resulted in school property taxes totaling $12,492.63 to be collected in 1970. The common school district spent $3,748.71

of this amount to educate its students during the first six months of 1970 prior to reorganization. On July 1, 1970, the common school district was absorbed into RCI/1 in accordance with the reorganization order. The remaining balance of 1970 school property tax receipts, $8,743.92, was not sufficient to pay for the costs of educating the 39 students from RCI/12 and the cost of satisfying the outstanding indebtedness of RCI/12, so the County Board of Education computed the liabilities on the basis of the total cost of tuition for the 39 students of RCI/12 for a period of one-half year as follows:

| | |
|---|---|
| 22 Secondary Students at $371.97 | $ 8,183.34 |
| 17 Elementary Students at $269.22 | 4,576.74 |
| Total Tuition Cost | $12,760.08 |
| Credit for RCI/12 1970 Tax Receipt Balance | (8,743.92) |
| Deficiency in Tuition | $ 4,016.16 |
| Registered Debt Warrant of RCI/12 | 1,840.00 |
| Subtotal | $ 5,856.16 |
| Interest at 6% for 1 Year | 351.36 |
| Total Liabilities in Excess of Assets | $ 6,207.52 |

To discharge this liability pursuant to SDCL 13–6–81 and to equalize the assets of the combined districts, the County Board of Education adopted a resolution directing the auditor to place a mill levy against the taxable property in RCI/12 in an amount sufficient to pay RCI/1 the sum of $6,208. The auditor proceeded to place this special mill levy along with the other school levies totaling 33.91 mills [6] on the 1970 assessed valuation of real property in RCI/12 of $1,493,585. This resulted in school property taxes totaling $50,647.47 to be collected in 1971. This mill levy was broken down into component parts as follows:

| | |
|---|---|
| 24.00 mills | general fund |
| 2.00 mills | special education |
| 5.00 mills | capital outlay |
| 2.91 mills | special levy to discharge RCI/12 liabilities. |

■ Without the assistance of numerical figures, the factual situation revealed by the record is that the taxpayers were as-

6. This mill levy is the figure for agricultural land, and we use this figure because RCI/12 consists largely of agricultural land. The non-agricultural valuation was small in comparison with the agricultural valuation and its mill levy was 49.91 which included the 2.91 mills as a special levy to discharge RCI/12 liabilities.

sessed a certain amount in 1969 for school property taxes which were payable in 1970. Part of these 1970 tax receipts was used to educate the students in the common school district during the first half of 1970. The remaining 1970 tax receipts were used as a credit toward the total tuition cost [7] of educating those same students in the RCI/1 system after reorganization and during the last half of 1970. The difference between the total tuition cost and the remaining 1970 tax receipts was recovered pursuant to statute by RCI/1 in the regular 1970 levy for school property taxes which were payable in 1971. Therefore, we conclude that there is no basis for filing an application for refund on the ground that the same property was assessed against more than once in the same year. The record reflects that there was only one assessment each year and that the taxpayers had a greater tax burden with regard to school property taxes after reorganization than they had prior to reorganization in their common school district. Although their school property taxes were increased as the result of the annual lax levy after reorganization, we hold that the taxpayers were not subjected to double taxation during the second half of 1970 as the result of the school reorganization.

The judgment of the circuit court is affirmed.

WOLLMAN, C. J., and MORGAN and FOSHEIM, JJ., concur.

HENDERSON, J., dissents.

HENDERSON, Justice (dissenting).

I would reverse and remand with instructions that the circuit court be directed to order the Pennington County Commissioners to grant the Spring Creek Taxpayers Association (appellant) abatement of taxes for one-half of Rapid City Independent School District No. 1's (RCI/1) 1970–71 fiscal year.

I am convinced that the appellant, all of whom are identified in the record as being taxpayers and real property owners within the old Spring Creek Common School District No. 12 (SCD/12), now absorbed into RCI/1, have been double taxed for one-half of the 1970–71 school year.

As a result of the school reorganization effective on July 1, 1970, the students of the former SCD/12 were transferred to RCI/1 in the fall of 1970. The Pennington County Board of Education determined that an additional $6,207.52, over and above the 1970 tax receipts, would be needed from the Spring Creek taxpayers in order to meet the equalization of assets formula. To discharge this deficiency, the county board directed the Pennington County Auditor to place a mill levy against the taxable property in the former SCD/12, sufficient to recover that amount. This should have ended the question of taxation for the remaining school months in 1970. However, it did not.

In August of 1970, the RCI/1 submitted its budget to the county auditor for the fiscal year of July 1, 1970, through June 30, 1971. The Pennington County Auditor, pursuant to SDCL 10–12–29, "spread a levy" of 33.91 mills "over the taxable property of the school district sufficient to raise the money requested by the school district." Although such taxes became due on the first day of January of the next year following assessment (SDCL 10–21–4), it is important to note that these taxes went to the RCI/1 school district to meet its proposed budget, which included a portion of the school years 1970–71 and 1971–72. This result is due to the fact that school districts run on a fiscal, rather than a calendar year. This budget covered the same six-month period of 1970 for which the Spring Creek taxpayers were already required to pay tuition and were taxed upon by virtue of the orders of the Pennington County Board of Education.

7. As the circuit court stated "As a result of this setoff, the students from Spring Creek were educated in the Rapid City School District during the last six months of 1970 on a tuition basis and the taxpayers were given credit for the unused portion of their local school district taxes for that same period."

The majority opinion states that the special mill levy of 2.91, assessed against the Spring Creek taxpayers, was combined with the other school levies, totaling 33.91 mills. The problem inherent in this analysis is that the budget had to be prepared by the business manager of the RCI/1 school district before September 1, 1970. SDCL 13–11–2. Furthermore, the budget of RCI/1 could not have contemplated the educational costs of Spring Creek students, as the Pennington County Board of Education did not determine that a levy for tuition expenses would be required until September 21, 1970.

Chapter 42 of the 1968 Session Laws, which was in effect in 1970, provides that only the county board of education may authorize a tax levy against the property located within the boundary of a former school district necessary to discharge such liabilities. If it is true that the 33.91 mill levy included the 2.91 mills to discharge the SCD/12's liabilities, the RCI/1 school board and business manager determined the liabilities of SCD/12, which they were not empowered to do. Article XI, section 8, of the South Dakota Constitution states, in part: "No tax shall be levied except in pursuance of a law, which shall distinctly state the object of the same . . . ." The imposition of the 33.91 mill levy created a new and additional tax, over and above the costs of educating the students in the former SCD/12 for the remainder of the 1970 school months.

I maintain that the people of SCD/12 should pay for the cost of educating their children, but not one penny more. In arriving at its budget proposals, the RCI/1 school board and business manager had to take into account the extra cost of educating these additional students for the 1970–71 school year, which included an overlap of this six-month period. At this time, the Spring Creek taxpayers were already being taxed and paying these students' tuition. This is contrary to our state statutes, constitution and the spirit of fairness that is to prevail in the school reorganization process. It is for this reason that I would reverse and remand with instructions that the circuit court be directed to order the appel-

lant's abatement of taxes for one-half of RCI/1's 1970–71 fiscal year, pursuant to SDCL 10–18–1(6).